FILED
United States Court of Appeals
Tenth Circuit

September 25, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM ELMO GAINES,

Defendant - Appellant.

No. 09-6001

(W.D. Oklahoma)

(D.C. No. CR-94-00064-C-8)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A grand jury returned a twenty-nine-count indictment charging defendant/ appellant William Elmo Gaines and eleven other individuals with various crimes committed during the course of a six-year conspiracy to distribute cocaine in the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Musgrave Addition area of Oklahoma City. While seven of the twelve entered into plea agreements, the remaining five, including Mr. Gaines, proceeded to trial, where Gaines was found guilty of two counts: one count of conspiracy to possess with intent to distribute powder cocaine and cocaine base/crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of distribution of one-half ounce of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

The presentence report ("PSR") prepared by the United States Probation Office in preparation for sentencing recommended holding Mr. Gaines accountable for 10.6 kilograms of crack cocaine. Based upon that amount, the PSR calculated a base offense level of 38, which, with a two-level enhancement for obstruction of justice, resulted in a total adjusted offense level of 40. With a criminal history category of I, Mr. Gaines' sentence under the United States Sentencing Commission, Guidelines Manual ("USSG"), was 292 to 365 months' imprisonment. The district court sentenced Mr. Gaines to 292 months' imprisonment, followed by five years of supervised release. This court affirmed Gaines' conviction and sentence on appeal. United States v. Gaines, Nos. 94-6408, 94-6410, 1995 WL 678504 (10th Cir. Nov. 15, 1995) (unpublished). The district court subsequently denied Mr. Gaines' motion for post-conviction relief, pursuant to 28 U.S.C. § 2255, and denied his motion for reconsideration. This court dismissed his appeal. United States v. Gaines, No. 99-6003, 2000 WL

223587 (10th Cir. Fed. 28, 2000) (unpublished). This court further denied

Mr. Gaines permission to file a second or successive § 2255 motion.

On January 9, 2008, Mr. Gaines filed this motion to reduce his sentence

pursuant to 18 U.S.C. § 3582(c)(2), seeking to modify his sentence by means of

the retroactive application of Amendment 706 to USSG § 2D1.1(c), which

lowered the Drug Quantity Table two levels for offenses involving crack cocaine.

See USSG § 2D1.1 (Nov. 1, 2007); USSG Supp. to App'x C, Amend. 706; United

States v. Sharkey, 543 F.3d 1236, 1237 (10th Cir. 2008) ("The Guidelines,

through Amendment 706, generally adjust downward by two levels the base

offense level assigned to quantities of crack cocaine."). The district court denied

the motion, finding that Mr. Gaines did not qualify for a reduction in sentence

because his base offense level of 38 remained unchanged. That is, his base

offense level at sentencing was 38, predicated upon the 10.6 kilograms of crack

cocaine attributed to him, and it remains at 38, post-Amendment 706, because

now a defendant responsible for 4.5 kilograms or more of crack cocaine still

receives a base offense level of 38. Thus, the Amendment would not change his

Guidelines sentencing range. See USSG § 2D1.1(c)(1). This appeal followed.

We affirm the district court's denial of Mr. Gaines' 18 U.S.C. § 3582(c)(2)

motion to modify his sentence.

# BACKGROUND

In late 1993/early 1994, the Oklahoma City police and the FBI began investigating the drug distribution activities of two of Mr. Gaines' co-defendants, Timothy Johnson and Nick Owens, and determined that the two men were directing a large-scale conspiracy to distribute crack cocaine in the Oklahoma City area. Our prior opinion affirming the convictions of Mr. Owens and Mr. Johnson, sets out the basic facts relating to the development of the conspiracy, and, more particularly, Mr. Gaines' involvement in the conspiracy, as established at the trial of Mr. Gaines and his co-defendants:

> At the end of 1987, Nick Owens began supplying his nephew Morris Johnson with one-quarter to one-half ounce of crack cocaine once or twice per week. After Morris Johnson sold the cocaine, he returned half of the money to Nick Owens and kept the other half. Nick Owens also supplied crack cocaine to his brother, Jerome Owens, for resale. In May 1988, Nick Owens began supplying his other nephew, Timothy Johnson, with the same amount of crack cocaine for resale. Later in 1988, Morris and Timothy Johnson hired Floyd Bush, their cousin Ronnie Johnson, Charles Watson, Arthur Westerbrook, and Devin Prince to help them resell the cocaine Nick Owens supplied to them. Morris and Timothy Johnson paid them $10 for every $50 worth of crack cocaine they sold. By late 1989, Nick Owens had begun supplying Morris and Timothy Johnson with as much as an ounce of crack cocaine at a time.
>
> Occasionally, Nick Owens supplied Morris and Timothy Johnson with cocaine powder instead of crack cocaine. Morris and Timothy's customers would only buy crack cocaine, not cocaine powder, and at that time they did not know how to cook powdered cocaine into crack cocaine, so they hired William Gaines. Mr. Gaines received $100 for every half-ounce of cocaine he cooked. Mr. Gaines taught Morris and Timothy Johnson how to cook cocaine some time before the summer of 1992. In the summer of 1992, Timothy Johnson and

William Gaines cooked one kilogram of cocaine together. After he taught Morris and Timothy Johnson how to cook cocaine, Mr. Gaines continued to participate in the organization by acting as a lookout and notifying Timothy Johnson by walkie-talkie if the police were nearby.

. . . .

. . . Mr. Gaines also occasionally sold small amounts of crack cocaine. Edwin Smith made a controlled buy of one-half ounce of crack cocaine from Mr. Gaines on February 25, 1994.

United States v. Owens, 70 F.3d 1118, 1122-23 (10th Cir. 1995).

The PSR, which the district court adopted, determined that "[d]uring the course of the conspiracy, it is estimated that in excess of 15 kilos of cocaine base were distributed." PSR at ¶ 15, R. Vol. 2. The PSR found as follows concerning Mr. Gaines' involvement:

According to agents and trial testimony, Gaines assisted Timothy Johnson from May 1992 to February 1994, in the total distribution of 1/2 to 1 kilogram of cocaine per month. This distribution took place primarily at the Waverly apartments, Musgrave apartments, and at 701 N.E. 83rd, Oklahoma City, Oklahoma. It should be noted, however, that during February 1994, Timmy Johnson was only able to obtain 6 ounces of cocaine due to an unpaid debt. A conservative total amount of cocaine base attributed to the [Mr. Gaines] is 376 ounces or 10.6 kilograms.

Id. at ¶ 33. In accordance with the PSR, at sentencing the district court attributed 10.6 kilograms of crack cocaine to Mr. Gaines. As indicated above, this quantity led to a base offense level of 38.[1]

_____

[1]When the PSR was prepared, the Guidelines provided an offense level of 40 for 10.6 kilograms of cocaine base. However, on November 1, 1994 (the day

(continued...)

Mr. Gaines objected to that drug quantity, arguing it was based upon "unproven references made by law enforcement agents, all of which conclude with the defendant having been assessed amounts of crack cocaine that was neither alleged nor proven in trial." Addendum to PSR at 18, R. Vol. 2. The district court rejected that objection.

In his direct appeal, Mr. Gaines again objected to the drug quantity of 10.6 kilograms. We addressed this argument as follows:

> Mr. Gaines contends the district court erred by attributing 10.6 kilograms of cocaine to him and relying on this finding in assigning him a base offense level of 38. U.S.S.G. § 2D1.1. Just as with [co-defendant] Kevin Johnson, the government contends any error was harmless provided at least 1.5 kilograms of cocaine base were attributable to Mr. Gaines. We agree for the reasons stated in our opinion in United States v. [] Owens[, 70 F.3d at 1130-31]

Gaines, 1995 WL 678504, at *2. We then concluded that there "was ample evidence at least 1.5 kilograms of cocaine base were attributable to Mr. Gaines,

---

[1](...continued)
Mr. Gaines was sentenced), Amendment 505 to the Guidelines became effective. That amendment altered USSG § 2D1.1 by deleting the two highest offense levels, 42 and 40, and lowering the maximum offense level for drug offenses to 38. Thus, Mr. Gaines' final base offense level was 38.

and we therefore find no reversible error." Id.[2] We affirmed Mr. Gaines'

conviction and sentence.

In this appeal of the denial of his 18 U.S.C. § 3582(c)(2) motion to modify

his sentence, Mr. Gaines argues (1) our decision in his direct appeal "reduced the

amount of cocaine base for which he should be held accountable to 1.5 kilograms,

well within the 4.5 kilogram 'limit' set by the Sentencing Commission [in

Amendment 706]"; and (2) the principles underlying United States v. Booker, 543

U.S. 220 (2005), require a modification of his sentence.


**DISCUSSION**

"We review for an abuse of discretion a district court's decision to deny a

reduction in sentence under 18 U.S.C. § 3582(c)(2)." Sharkey, 543 F.3d at 1238.

When a "motion for sentence reduction is not a direct appeal or a collateral attack

---

[2]In Owens, we found as follows concerning the evidence establishing that
the conspiracy involved at least 1.5 kilograms of cocaine:

> Courts may rely on government estimates to approximate the quantity
> of drugs attributable to a defendant, provided there are sufficient
> indicia of reliability to support the estimate's probable accuracy.
> Combining the estimated amounts of cocaine attributable to Kevin
> Johnson with the specific amounts of cocaine the record shows he
> actually handled or dealt with directly, we agree at least 1.5
> kilograms of cocaine base were attributable to him and, if the district
> court's finding was clearly erroneous, the error was harmless as a
> matter of law.

Owens, 70 F.3d at 1131 (internal quotations, citations and alterations omitted).

-7-

under 28 U.S.C. § 2255, the viability of [the] motion depends entirely on 18 U.S.C. § 3582(c)." United States v. Smartt, 129 F.3d 539, 540 (10th Cir. 1997) (internal quotation, citation, and alteration omitted).

Section 3582(c)(2) allows a sentence reduction "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ." 18 U.S.C. § 3582(c)(2). In such a case, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. (emphasis added).

The applicable policy statement, USSG § 1B1.10, provides that where "the guideline range applicable to [a] defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." USSG § 1B1.10(a) (2008). Subsection (c) includes Amendment 706 among the enumerated amendments. In determining the extent of any reduction under § 3582(c)(2), "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced." USSG § 1B1.10(b)(1). The policy statement further provides that: "A reduction in the defendant's term of imprisonment is

-8-

not consistent with [the] policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." USSG § 1B1.10(a)(2)(B).

As a result of Amendment 706, the current highest offense level of 38 would require a quantity of 4.5 kilograms or more of crack cocaine, rather than the 1.5 kilograms previously required for level 38. See USSG Supp. to App'x C, Amend. 706 (Reason for Amend.). On December 11, 2007, the Sentencing Commission voted to make Amendment 706 retroactive, through Amendments 712 and 713. See USSG § 1B1.10(a) and (c); USSG Supp. to App'x C, Amends. 712 and 713.

Mr. Gaines argues that he was not actually found responsible for 10.6 kilograms of crack cocaine. He attempts to derive support for this argument by noting that, in our affirmance of his sentence on direct appeal, we stated that "[t]here was ample evidence at least 1.5 kilograms of cocaine base were attributable to Mr. Gaines." Gaines, 1995 WL 678504, at *2. He thus suggests that we only affirmed a 1.5 kilogram quantity of crack cocaine. We disagree. As our decision makes clear, the government suggested that our court only needed to find Mr. Gaines accountable for 1.5 kilograms of crack cocaine, in order to uphold his sentence. As the district court observed in denying Mr. Gaines' 18 U.S.C. § 3582(c)(2) motion to modify his sentence:

> [i]mportantly for purposes of the present issue, the [Tenth] Circuit did not find any error in the [district] Court's determination of 10.6 kilograms nor did it hold that [Mr. Gaines] was responsible for only 1.5 kilograms. . . . The Tenth Circuit did not find the Court erred in finding 10.6 kilograms were attributable to Defendant. Rather, it found it unnecessary to determine what amount was attributable to Defendant as long as it was at least 1.5 kilograms.

Order at 1-2, R. Vol. 1 at 81-82. Thus, our decision on direct appeal did nothing to undermine the validity of the sentencing court's attribution of 10.6 kilograms of crack cocaine to Mr. Gaines for sentencing purposes. Accordingly, Amendment 706 does not have the effect of lowering Mr. Gaines sentencing range.

To the extent Mr. Gaines' argument amounts to an attempt to collaterally attack the drug quantity originally calculated at his sentencing, that argument must also fail. Mr. Gaines may not use § 3582(c)(2) to collaterally attack his original sentence. "An argument that a sentence was incorrectly imposed should be raised on direct appeal or in a motion to vacate, set aside, or correct [a] sentence pursuant to 28 U.S.C. § 2255." United States v. Torres-Aquino, 334 F.3d 939, 941 (10th Cir. 2003); United States v. Williams, 290 Fed. Appx. 133, 2008 WL 3861175, **2 (10th Cir. 2008) ("By challenging the quantity of drugs calculated by the sentencing court, [defendant] is attempting to use his § 3582(c)(2) motion as a vehicle to challenge the substance of, or the proceedings that determined, his original sentence.").

Finally, Mr. Gaines argues that the remedial opinion in <u>Booker</u>, as well as the provisions of 18 U.S.C. § 3553(a), should govern the modification of his sentence and should permit the district court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). We have, however, repeatedly rejected the notion that the principles informing <u>Booker</u> have any role in a sentencing modification proceeding under § 3582(c)(2). <u>See</u> <u>United States v. Rhodes</u>, 549 F.3d 833, 839 (10th Cir. 2008) ("<u>Booker</u> simply has no bearing on sentencing modification proceedings conducted under § 3582(c)(2)."), <u>cert. denied</u>, 129 S. Ct. 2052 (2009); <u>see also</u> <u>United States v. Pedraza</u>, 550 F.3d 1218, 1220 (10th Cir. 2008) ("A resentencing proceeding is an entirely different animal that does not implicate the Sixth Amendment concerns that drove the <u>Booker</u> remedy."), <u>cert. denied</u>, 129 S. Ct. 2406 (2009). Accordingly, an "argument that <u>Booker</u> and the Sixth Amendment mandate discretion to impose a below-guidelines sentence at resentencing has been settled: they do not." <u>Pedraza</u>, 550 F.3d at 1220. Further, to the extent Mr. Gaines argues that the district court erred in applying the limitation announced in USSG § 1B1.10, we have rejected that argument as well. <u>United States v. Williams</u>, ___ F.3d ___, 2009 WL 2371266 (10th Cir. Aug. 4, 2009).

**CONCLUSION**

For the foregoing reasons, the district court's decision is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge